OPINION OF THE COURT
Patricia M. Filiberto, J.
Upon the consent of both parties, the court granted defendant’s motion to the extent of a hearing to determine reasonable suspicion for the initial stop of defendant’s vehicle, probable cause to arrest, and voluntariness of defendant’s statements. A combined suppression hearing was held before this court. The court now makes the following findings of fact and conclusions of law relevant to the issues raised.
Based upon all the credible evidence adduced at the hearing, the court finds that on April 9, 2009 at 3:08 a.m., Officer Wassmer was on patrol, alone, in a marked car driving south on County Road 83, near North Ocean Avenue and Pine Road, in Coram, Brookhaven, Suffolk County, New York. County Road 83 has two southbound lanes of traffic. Officer Wassmer was in the right southbound lane which is bounded on the right side by a single solid line, known as a “fog line.” About 300 feet in front of him he observed a driver — the only other driver on the road— cross the fog line one time and then return to the lane of travel. The driver was not speeding nor operating the car erratically. The officer activated his emergency lights and the driver stopped appropriately on the shoulder of the road. Officer Wassmer stopped about 15 feet behind the car. He approached the driver’s side of the car and asked the woman for her license, registration and insurance. She provided her license to the officer. The officer noticed that the woman had bloodshot, glassy eyes, slurred speech, and the smell of alcohol emanating from the car. He asked the woman from where she had been coming and if she had been drinking. The woman responded that she was coming from “Nappers and had one beer.” The officer said he understood everything the woman said.
Officer Wassmer asked the woman to exit her car and walk to the back of it to perform standard field sobriety tests. The area was paved in asphalt, dimly lit, and the weather was cloudy and dry. Officer Wassmer said the woman did not stumble or fall down as she made her way to the rear of her car. The area was illuminated by the rear strobe light of the police car and the officer’s mag light.
*689 The suspect was asked to perform the horizontal gaze nystagmus test, the walk and turn test, the one leg stand, and to take a prescreen breath test. The suspect did not indicate prior to any test that she had a medical condition that would prevent her from performing the tests or that she was taking medication. The suspect exhibited indications of intoxication in the performance of each test. Officer Wassmer formed the opinion that the suspect was intoxicated. He did a check of her driving privileges and found that her privileges were suspended.
Officer Wassmer arrested the defendant for driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3), aggravated unlicensed operation of a motor vehicle in the third degree in violation of Vehicle and Traffic Law § 511 (1) and failing to maintain lane in violation of Vehicle and Traffic Law § 1128 (a) — specifically that the defendant crossed the solid right side traffic marking.
Defendant was transported to the Sixth Precinct where Officer Wassmer read to her the request to take a chemical test and warnings of refusal. Defendant consented to take the chemical test at 3:56 a.m., initialed the document in the appropriate space, wrote the word “consent” and signed her name. The breath test results were .14% blood alcohol content.
Officer Wassmer read to the defendant the Miranda warnings. She did not indicate that she did not understand and she did not ask the officer to repeat the warnings or read them more slowly. The defendant agreed to answer questions without a lawyer present. She wrote her signature at the bottom of the form containing her answers.
Conclusions of Law
The primary issue before this court is whether the defendant violated Vehicle and Traffic Law § 1128 (a), failing to maintain lane and unsafe lane change, by crossing — one time — the solid white right side traffic marking, known as “the fog line.” The defendant is not charged with a violation of Vehicle and Traffic Law § 1128 (d), which prohibits crossing the solid white right road marking that separates the lane of travel from the shoulder of the road, nor is she charged with a violation of Vehicle and Traffic Law § 1131, which prohibits driving over, across, along or within the shoulder of the road unless authorized. There is no indication adduced from the hearing that Officer Wassmer had a reasonable suspicion that the driver of the vehicle had committed, was committing, or was about to commit a crime. The defense asserts that the stop is pretextual in that it *690 was the only stop made that night by the officer and it occurred less than one hour before he completed his tour of duty.
In People v Robinson (97 NY2d 341, 349 [2001]), the Court of Appeals stated,
“We hold that where a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation, a stop does not violate article I, § 12 of the New York. State Constitution. In making that determination of probable cause, neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant.”
The Court in Robinson went on to state, “that ‘police stops of automobiles in this State are legal only pursuant to routine, nonpretextual traffic checks to enforce traffic regulations or when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime’ ” (id. at 351; see People v Fisher, 20 Misc 3d 1136[A], 2008 NY Slip Op 51746[U] [2008]).
The People claim that Officer Wassmer made a valid stop because the defendant crossed the fog line one to three times. However, the court’s review of the transcript indicates that Officer Wassmer’s testimony was that the defendant crossed the solid white line one time. The People rely on the decision in People v Parris (26 AD3d 393 [2006], lv denied 6 NY3d 851 [2006]). In Parris, the defendant crossed onto the shoulder of the highway twice over a short distance. The Court found that defendant’s act established a violation of both Vehicle and Traffic Law § 1128 (a) and Vehicle and Traffic Law § 1131, which is not charged here.
Vehicle and Traffic Law § 1128 states:
“Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
“(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.”
Vehicle and Traffic Law § 1131 states:
“[N]o motor vehicle shall be driven over, across, *691 along, or within any shoulder or slope of any state controlled-access highway except at a location specifically authorized and posted by the department of transportation. The foregoing limitation shall not prevent motor vehicles from using shoulders or slopes when directed by police officers or flagpersons, nor does it prevent motor vehicles from stopping, standing, or parking on shoulders or slopes where such stopping, standing, or parking is lawful.”
In People v Shulman (14 Misc 3d 129[A], 2006 NY Slip Op 52508[U] [2006]), the Appellate Term reversed a conviction for violation of Vehicle and Traffic Law § 1128 (d) by crossing over the solid white shoulder line two times. Vehicle and Traffic Law § 1128 (d) (as written before 2010) states: “When official markings are in place indicating those portions of any roadway where crossing such markings would be especially hazardous, no driver of a vehicle proceeding along such highway shall at any time drive across such markings.”
The court in Shulman held that
“[t]he crossing of a solid white line is discouraged, but not prohibited (see 17 NYCRR §§ 261.2, 261.5 [c]; § 261.7 [a]; People v Hollinger, 2002 NY Slip Op 40485[U] [App Term, 9th & 10th Jud Dists]) and, thus, such a marking does not constitute an indication that crossing same would be ‘especially hazardous’ (Vehicle and Traffic Law § 1128 [d]).”
Therefore, defendant’s driving did not establish a violation of Vehicle and Traffic Law § 1128 (d). In People v Bordeau (21 Misc 3d 1121[A], 2008 NY Slip Op 52117[U], *3 [2008]), the Essex County Court held “a single instance of crossing the . . . ‘fog’ line . . . for a period not exceeding three seconds ... is not a traffic infraction in violation of Vehicle and Traffic Law § 1128 (d).” The Essex County Court relied not only on the decision in People v Shulman, but also, on the New York State Supplement to the National Manual on Uniform Traffic Control Devices for Streets and Highways (2003 ed) which states: *692 In Bordeau (at *3), the court found no evidence that any “order” was in effect “establishing specific lane changing prohibitions” for the particular section of road involved in that case; therefore, the court found no violation of section 1128 (d) of the Vehicle and Traffic Law.
*691 “White barrier markings are used where lane changing is legally prohibited by official regulation. An order, ordinance, rule, or regulation establishing specific lane changing prohibitions for a particular section of roadway is necessary for no-lane-changing markings to be ‘official markings,’ as referred to in Section 1128(d) of the Vehicle & Traffic Law.” (17 NYCRR 3B.04.)
*692 In People v Davis (58 AD3d 896, 898 [2009]), the Appellate Division, Third Department, found that defendant’s brief contacts with the fog line by traveling “partially” on the fog line three to four times did not create reasonable suspicion that a violation of Vehicle and Traffic Law § 1128 (a) had occurred. The Court reasoned, “we decline to hold that fog line encroachment can never be the basis for a valid traffic stop as a matter of law. However, in this case, we are mindful that [the officer] only testified to brief contacts with the fog line prior to the stop” (58 AD3d at 898).
As in Davis, in the case before this court, the officer did not indicate that the defendant was weaving within lane, driving erratically, speeding or driving too slowly. Here, the officer observed the defendant cross the solid white shoulder line one time and return to her lane of travel. The officer was driving 300 feet behind the defendant’s car. There were no other cars on the road. There is no indication that defendant’s car drifted into the other southbound lane of traffic. There is no testimony as to how far over the fog line defendant drove the car. The defendant is not charged with a violation of Vehicle and Traffic Law §§ 1131 or 1128 (d). When the officer activated his emergency lights, the defendant pulled over and stopped her vehicle appropriately in the shoulder of the road.
When read together, the decisions in People v Shulman (supra), People v Bordeau (supra), and People v Davis (supra), persuade this court that defendant’s act of crossing the solid white fog line one time was insufficient, without more, to establish probable cause that she failed to “drive[ ] as nearly as practicable entirely within a single lane” and that she moved her vehicle unsafely from her lane of travel in violation of Vehicle and Traffic Law § 1128 (a). In reaching its decision that Police Officer Wassmer did not have sufficient probable cause to stop the defendant for a violation of Vehicle and Traffic Law § 1128 (a), the court need not address the further issues of probable cause to arrest for driving while intoxicated and the voluntariness of the defendant’s statements to the officer. Defendant’s motion to suppress is granted in all respects; all evi *693 dentiary fruits of the stop are suppressed and precluded from use at trial.